**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION



| | |
|---|---|
| In re: ) | Case No. 10-17252 |
| ) | |
| GEORGE C. DAHER, ) | Chapter 7 |
| ) | |
| Debtor. ) | Chief Judge Pat E. Morgenstern-Clarren |
| ) | |
| ) | **AMENDED** |
| ) | **MEMORANDUM OF OPINION**[1] |

An agreed order required attorney John Gold to place disputed funds in his client trust account pending further court order. After the court found the funds to be property of the chapter 7 estate, the court ordered him three times to turn the money over to the chapter 7 trustee. Attorney Gold ignored these orders. Following months of obfuscation, the reason became clear: Mr. Gold had taken all of the funds from his trust account and used them for his own purposes.

The United States trustee now moves to hold John Gold in civil contempt for violating the four orders, and Mr. Gold opposes the motion claiming he had the right to take the funds. This court finds that Mr. Gold did not have the right to take any funds without a court order, he knew he did not have that right, and he knowingly violated the court orders. The court finds further that Mr. Gold did not establish any defense to the motion, and accordingly finds him in civil contempt and sanctions him as set out below.

---

[1] This memorandum of opinion is amended only to change a date on page 5. *See* docket 167.

## JURISDICTION

Jurisdiction exists under 28 U.S.C. § 1334 and General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio on April 4, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2) and it is within the court's constitutional authority as analyzed by the United States Supreme Court in *Stern v. Marshall*, 131 S.Ct. 2594 (2011) and its progeny.

## CIVIL CONTEMPT OF COURT

This court set out the applicable law in an earlier memorandum of opinion in this case:[2]

> When a court seeks to enforce its order or supervise its judgment, one weapon in its arsenal is contempt of court." *Elec. Workers Pension Trust Fund of Local Union #58 v. Gary's Electric Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003). This court has civil contempt powers. *In re Walker*, 257 B.R. 493, (Bankr. N.D. Ohio 2001). "Contempt proceedings enforce the message that court orders and judgments are to be complied with in a prompt manner." 340 F.3d at 378-79. Civil contempt is used to coerce a party to do what the court has previously ordered him to do. *Turner v. Rogers*, 131 S.Ct. 2507, 2516 (2011). A finding of contempt is warranted when it is shown by "clear and convincing evidence" that a party has "'violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" 340 F.3d. at 379 (quoting *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987)). Once a movant establishes a prima facie case for contempt, the burden shifts to the alleged contemnor "who may defend by coming forward with evidence that he is *presently* unable to comply with the court's order." *Id.* at 379 (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)). To meet this burden it must be shown "'categorically and in detail why he . . . is unable to comply with the court's order.'" *Id.* (quoting *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996)). The Sixth Circuit has stated that a finding of civil contempt is appropriate where the alleged contemnor is unable to show that his present inability to comply is not his own fault or self-induced. *Id.* at 383.

---

[2] Docket 154. The court quotes it here for the convenience of the reader.

>Sanctions for civil contempt may be employed for "either or both of two purposes:" (1) to coerce compliance with the court's order; and (2) to compensate for damages caused by the non-compliance. 340 F.3d at 379 (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-4 (1947)). In general, courts impose two types of civil fines to coerce compliance. The first type is a monetary fine that compensates for the damages caused by the non-compliance, which must be based on evidence of the complainant's actual loss. *United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1991). The second type is a fine payable to the court that can be avoided by complying with the court's order. *Id.* In addition, incarceration is an appropriate sanction for civil contempt if the commitment can be avoided by complying with the court's order. *Id.* (collecting cases).

## THE POSITIONS OF THE PARTIES

The United States trustee contends that Mr. Gold violated four court orders, the first directing him to hold money in his Interest on Lawyer's Trust Account (commonly referred to as an IOLTA account) pending further court order, and the next three directing him to turn the funds over to the chapter 7 trustee. As sanctions, the UST asks that Mr. Gold be ordered to account for the funds, to be fined $50.00 a day until he does so, to pay the attorney fees incurred by the chapter 7 trustee, to have his electronic filing privileges revoked, to be denied any attorney fees, and to be enjoined from attempting to seek any attorney fees.

Mr. Gold did not file anything in opposition, although he had ample opportunity to do so. The court nevertheless permitted him to present his arguments at the hearing. He contended that he is not in contempt because (1) he does not agree with this court's earlier rulings; (2) he had a right to take the money under a charging lien theory; and (3) the orders had conflicting information.[3]

---

[3] This court previously considered some of the contempt issues in the context of a motion filed by the chapter 7 trustee to find Mr. Gold in contempt and to sanction him. Docket 120. The motion under consideration now is a different motion filed by the United States trustee, and so the court will re-visit each of the contempt issues.

3

## FACTS AND DISCUSSION[4]

### The First Order: September 9, 2013[5]

This agreed order stated in relevant part:

> The funds at issue are $51,032.37 held by the State of Ohio, Division of Unclaimed Funds. The funds shall be released to debtor's counsel, John Gold, and Mr. Gold agrees to hold said funds in his IOLTA account until the Bankruptcy Court makes a determination as to whether and how much of the funds are property of the bankruptcy estate. To the extent this Court determines what, if any, portion of the funds are property of the estate, John Gold shall deliver said funds to the Trustee . . . .
>
> IT IS THEREFORE ORDERED that the Trustee shall cooperate with the Debtor's efforts to obtain the $51,032.37 of unclaimed funds from the State of Ohio, Division of Unclaimed Funds, and that said funds shall be held in John Gold's IOLTA account until this Court is presented with the appropriate pleadings and makes a further ruling as to whether the funds are property of the estate. Any portion of said funds that are determined to be property of the estate shall be delivered to the Trustee by John Gold.

In April 2014, this court entered a judgment finding the funds to be property of the estate and requiring them to be turned over to the chapter 7 trustee.[6] The Bankruptcy Appellate Panel of the Sixth Circuit affirmed the decision about eight months later.[7] Mr. Gold did not turn over the funds.

---

[4] Attorney Gold had notice and an opportunity to be heard before the court entered each order. The facts are set out in more detail in this court's earlier orders.

[5] Docket 44.

[6] Adv. Pro. 13-1232, docket 23 and 24.

[7] Adv. Pro. 13-1232, docket 39.

### The Second Order: February 6, 2015[8]

The parties then compromised the issue, as reflected in a court order which called for the debtor to retain $18,300.00 and to "remit to the Trustee $32,722.37 within 5 days of the execution of an order granting this Motion." Mr. Gold did not turn over the funds.

### The Third Order: July 21, 2015[9]

The chapter 7 trustee moved to hold Mr. Gold in contempt because he refused to comply with the order compromising the dispute. The court ordered Mr. Gold to turn the funds over no later than July 24, 2015. Mr. Gold did not do so.[10]

### The Fourth Order: July 28, 2015[11]

The court denied Mr. Gold's motion to reconsider the July 21 order and ordered him to turn over the funds by noon on the next business day after the order was entered. Mr. Gold did not.

#### Mr. Gold Refuses to Comply with a Court Order Directing Him to Produce His IOLTA Statements in Court

The chapter 7 trustee again moved for an order requiring Mr. Gold to appear and explain why he should not be held in contempt for ignoring court orders. The court granted the motion

---

[8] Docket 95.

[9] Docket 120

[10] The court declined to hold Mr. Gold in contempt at that time based on the facts as they were then known.

[11] Docket 124.

and set the contempt issue for hearing on August 17, 2015.[12] The court also ordered Mr. Gold to bring complete documentation concerning the location of the funds.

At that hearing, Mr. Gold resisted providing information about what had happened to the money and failed to bring with him the required documents. Eventually, he admitted he had withdrawn most of the money from the account. The court adjourned the hearing when Mr. Gold asked to consult with an attorney.

The court issued an order admonishing Mr. Gold for his unprofessional conduct in failing to comply with the order to bring the IOLTA documents with him to court and in fabricating excuses for his failure.[13]

### The UST Proved that Mr. Gold is in Civil Contempt

Mr. Gold's IOLTA statements, when finally produced,[14] show that he deposited $53,161.72 on October 3, 2013. This amount is higher than the amount listed in the agreed order, perhaps because of interest. In any event, Mr. Gold acknowledged these are the funds he received and was to place in the account.[15] By no later than January 31, 2015, he had taken all of

---

[12] Docket 127.

[13] Docket 154.

[14] Mr. Gold produced the statements only after the court advised him that it would instruct the United States Marshal's Service to take him into custody until he provided the documents. Docket 149.

[15] Hearing testimony September 17, 2015.

the money from his IOLTA account, without a court order permitting him to do so.[16] This establishes that Mr. Gold violated the agreed order.

As to the second element–that Mr. Gold did so knowingly–Mr. Gold offers that he did not violate the orders knowingly but only because they were ambiguous and he read them differently. The court rejects that excuse. The agreed order is crystal clear that Mr. Gold was not to take any of the money from his IOLTA account without a court order; no word in that order is susceptible to more than one meaning and the same is true of all the words read in combination. There is, then, nothing remotely ambiguous about the agreed order. The three orders that followed state unequivocally that he was to turn the money over to the chapter 7 trustee. There is no room in those orders for confusion. And if Mr. Gold had really believed that the orders could be read to permit his actions, he would have come forward as soon as the issue arose. Instead, the truth came out only after multiple hearings aimed at uncovering what happened to the money.

With these determinations, the UST has established a prima facie case for contempt, shifting the burden to Mr. Gold to prove that he was unable to comply with the four court orders. As noted, the court permitted him to make his arguments at the hearing. In addition to the argument already discussed, he made statements that fall into two categories: he does not agree with this court's orders on the merits and he had the right to take the money under a charging lien theory. Neither of these is a defense to a civil contempt motion.

---

[16] As noted in the September 21, 2015 order, he probably removed those funds far earlier but has not provided sufficient documentation to establish that.

7

On the first point, little discussion is needed. A party who disagrees with a trial court order is entitled to at least one appeal as of right. Mr. Gold took that appeal, lost, and did not go further with the appellate process. An unhappy party does not have the option to continue arguing the same resolved issue at the trial level, much less to act in violation of a court order.

The second point raises a related and equally unconvincing argument, which is that Mr. Gold was entitled to take his attorney fees from estate property, without a court order, under a charging lien theory. His signature to the agreed order provided otherwise. If he felt he had some superior right to simply take the money, he should not have signed the agreed order in which he promised to hold the money pending further court order. Further, this court already ruled on the merits that this theory did not support his actions.[17] Mr. Gold can insist as much as he wants that he intended all along to be paid from these funds, but wishing does not make it so. Nor does it provide a defense to a civil contempt motion.[18]

### REMEDIES

The UST asks that Mr. Gold be ordered to account for the funds by a date certain and pay $50.00 a day for every day on which he fails to do so, pay the chapter 7 trustee's attorney fees, have his electronic filing privileges revoked, be denied any attorney fees, and be enjoined from seeking any attorney fees. Mr. Gold did not present any argument on the sanction issues. The court finds that as sanctions to compensate for damages caused by Mr. Gold's conduct:

---

[17] Docket 120 and 124. It is a basic bankruptcy principle that no attorney can be paid fees from a bankruptcy estate without a court order.

[18] The court notes that Mr. Gold did not argue a present inability to comply that is not his own fault or self-induced.

1.  Mr. Gold is to file a written account for the funds within 14 days after the date on which this opinion is entered. If he fails to do so, he will be fined $50.00 a day until he complies. There are numerous unresolved questions about the funds which he is to address, including these:

> a.  The dates on which he withdrew any and all funds from his IOLTA account, together with the amount of each such withdrawal, and the use to which he put those funds;
>
> b.  Why there is a difference between the amount originally contemplated to be paid over by the State of Ohio and the higher amount reflected in Mr. Gold's deposit to his IOLTA account; and
>
> c.  Irregularities in the Distribution Statement Mr. Gold gave to the debtor, produced by the debtor at the hearing.[19] The statement reads:

JOHN W. GOLD, LLC
DISTRIBUTION STATEMENT

Funds received
Settlement Proceeds                                    $16,599.99
Expenses
Legal Fees
    40% Contingency Fee        ($6,639.99)
    Courtesy Discount          $2,040.00
NET DISBURSEMENT TO CLIENT                             $12,000.00

I have authorized Attorney to settle this claim according to the above terms, as more fully set forth in the Full and Final Release of All Claims previously executed by me in this matter.

/S/   George C. Daher              2/6/2015

Mr. Gold is to account for how he arrived at the Settlement Proceeds and Courtesy Discount numbers.

---

[19] Exhibit 1.

2.   Mr. Gold is to pay the attorney fees incurred by the chapter 7 trustee in connection with this issue. The trustee would not have had to hire counsel but for Mr. Gold's duplicity and intransigence, making it proper that he pay that expense.

Revoking Mr. Gold's ECF privileges is not necessary to compensate for damages he caused, although it would be warranted under 11 U.S.C. § 105(a). The court declines to do that for the moment, but advises Mr. Gold that it is still an option.

Although the UST asks the court to deny Mr. Gold any attorney fees from the estate and to be enjoined from attempting to seek any such fees, there is no need to do so because this court has already ruled that Mr. Gold is not entitled to any fees from any funds that were the subject of the agreed order.

## CONCLUSION

Attorney Gold violated these trusts: the trust placed in him as an officer of the court that he would deal honestly and candidly with others, including obeying all court orders; the trust placed in him by the bankruptcy system that he would respect the laws applicable to bankruptcy cases; and the trust placed in him by the judicial system that he would establish and maintain an IOLTA account that complied with all of the rules, including the fundamental principle that funds in those accounts are not the personal property of the attorney. Given these stark facts, one might expect Mr. Gold to have shown remorse, regret or at least recognition of his wrongdoing. He expressed none of that. Instead, coldly and without apology, he continued to insist that he was entitled to take the money–all of the money–in an amount even beyond his fee agreement despite the agreed order. He did not come forward willingly to admit he had done so,

acknowledging his misappropriation only after defying repeated orders to produce his IOLTA monthly statements. Mr. Gold has no one but himself to blame for the sanctions imposed here.

A separate order will be entered reflecting this decision.

_____
Pat E. Morgenstern-Clarren
Chief Bankruptcy Judge